IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PETER J. THORESON,

                                Plaintiff,                          OPINION AND ORDER

        v.                                                          19-cv-998-wmc

JAYMES POPLIN, KEVIN GILLIS, SAWYER
COUNTY, and SAWYER COUNTY SHERIFF'S
DEPARTMENT,

                                Defendants.

Plaintiff Peter J. Thoreson asserts Fourth Amendment claims against Sawyer County and two of its law enforcement officers after being detained twice, once in 2016 and again in 2019, each time while a search warrant was being executed at his home several miles away. Plaintiff also asserted claims against the City of Hayward and two of its law enforcement officers based on the same conduct, but has since settled his claims with those defendants. (Dkt. ##35, 36.) Before the court is defendants' motion to dismiss certain claims, as well as the parties' cross-motions for summary judgment. (Dkt. ##21, 40, 46.)

For reasons explained more fully below, the court will grant in part and deny in part defendants' motion to dismiss, dismissing without opposition: (1) plaintiff's false imprisonment claim against all defendants because of his failure to comply with the notice requirement under Wisconsin Statute § 893.80; and (2) all other claims against defendant Sawyer County Sheriff's Department because it is not a suable entity. However, the court will deny defendants' remaining motion to dismiss the claim against the County under *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978). As for the cross-motions for summary judgment, the court will grant defendants summary judgment as to

the *Monell* claim against the County based on plaintiff's failure-to-train theory, but will deny the motion as to plaintiff's theory that a practice of detaining residents existed upon issuance of a search warrant of their residence without regard to whether: (1) they were in the vicinity of the residence; or (2) there was an independent basis to find probable cause or reasonable suspicion to detain or arrest the residents.

As for the motions for summary judgment with respect to the two individual defendants, the court will deny the motion as to defendant Gillis, and it will grant in part and deny in part the motion as to defendant Poplin. As for plaintiff's claim against Poplin, the court will grant the motion as to plaintiff's Fourth Amendment claim based on the towing of his vehicle in 2016, but the court will deny the motion in all other respects.[1]

Finally, defendants also filed an unopposed motion to hold the trial in Eau Claire. (Dkt. #65.) The court will deny that motion because the courtroom in Eau Claire is currently under construction and will not be completed by the April 19 trial date. In the opinion below, however, the court describes other possible alternatives to conducting a full trial in Madison.

---

[1] The court notes that in addition to bringing Fourth Amendment claims, plaintiff also asserts a due process claim under the Fifth and Fourteenth Amendments. (Am. Compl. (dkt. #15) Count III.) Neither party addresses this claim in their briefing. The parties should clarify whether plaintiff is still pursuing this claim in their respective pretrial submissions, as well as the specific legal contours of the claim, distinguishing the elements and facts that provide a right to proceed separately from the obviously applicable unlawful detention claim addressed in this opinion.

UNDISPUTED FACTS[2]

## A. Overview of the Parties

Plaintiff Peter J. Thoreson is an adult resident of Wisconsin, who resides in the City of Hayward in Sawyer County.

Defendant Jaymes Poplin is an employee of the Sawyer County Sheriff's Department.  On November 11, 2016, Poplin was employed as a patrol deputy; on October 11, 2019, he was employed as a detective.  Defendant Kevin Gillis also is an employee of the Sawyer County Sheriff's Department, and he was employed as a patrol deputy on October 11, 2019.  At all times relevant to this action, Poplin and Gillis were both certified as law enforcement officers by the State of Wisconsin, Department of Justice, Law Enforcement Standards Board.

Defendant Sawyer County is a municipal corporation, organized under the laws of the State of Wisconsin.  Defendant Sawyer County Sheriff's Department is a law enforcement agency of Sawyer County, Wisconsin.

## B. 2016 Search and Arrest

In November 2016, the City of Hayward conducted an investigation of Thoreson relating to allegations of drug possession.[3]  Hayward City Policy Officer Robert Billen

---

[2] Unless otherwise noted, the court finds the following facts material and undisputed.

[3] While defendants also mention an investigation of Thoreson based on allegations of abuse, including physical and sexual abuse of a child, the City's search warrant application only mentions alleged drug paraphernalia, focused on marijuana, without any reference to alleged abuse of children.

interviewed Thoreson's ex-wife regarding drug activity that she saw at his residence.[4]  As a result of that investigation, Billen applied for and obtained a search warrant for Thoreson's residence, including any outbuildings, containers, and "vehicles associated with said property."  (Billen Decl., Ex. A (dkt. #52-1) 2.)  Plaintiff does not dispute that the search warrant contains this language, but emphasizes that the search warrant "does not authorize search or seizure of a vehicle located in another municipality."  (Pl.'s Resp. to Defs.' PFOFs (dkt. #56) ¶ 18.)

The search warrant was issued by Sawyer County Judge John Yackel on November 11, 2016, and that same morning, City of Hayward police officers asked Sawyer County Sheriff's personnel to assist them in executing the search warrant.  Before doing so, City policy officers and Sawyer County Sheriff's personnel attended a briefing at the Hayward Police Department.  Hayward Policy Chief Joel Clapero, Assistant Policy Chief James Wohling, Officer Wes Peters, Officer Charles Logan, Sheriff's Deputy Brian Deyo, and Sheriff's Deputy Jaymes Poplin were present at that briefing.  As a result, defendant Poplin was aware:  (1) that Thoreson was the subject of a criminal investigation; (2) of the nature of the suspected criminal activity; and (3) that the items sought in the search warrant were connected to the suspected criminal activity.

At approximately 12:45 p.m., the individuals who participated in the briefing arrived at Thoreson's residence and executed the search warrant.  After discovering that the residence was unoccupied, City Assistant Chief Wohling requested that County

---

[4] While plaintiff purports to dispute this fact, he actually only clarifies that Thoreson's ex-wife was the source of the allegations about drug activity and child abuse.

Deputy Poplin locate Thoreson while the others continued searching the residence. Recalling a business named "Thoreson Log Works" in Seeley, north of Hayward, Poplin drove to see if Thoreson was there.  Computer aided dispatch ("CAD") reports show that Poplin radioed his location at Thoreson Log Works at 12:47 p.m.  At that time, Poplin was in uniform and armed.

Thoreson does in fact do business as Thoreson Log Works, which is located in the Town of Lenroot, also in Sawyer County and approximately 10 miles from his residence. Thoreson Log Works is located on leased property, which is approximately one-half acre in size.  The property is bounded on the east by U.S. Highway 63, to the south by Town Hall Drive, to the west by a concrete slab and driveway, and to the north by another business ("The Sawmill Saloon," a dining establishment).  The property consists of an open grassy area, a gravel area, a workshop, an office and a storage shed.  Thoreson apparently uses part of that property to carve statues and related objects from wood with power tools and sharp objects.  Thoreson also sells his wood carvings on the property.  His business is open to the public, and patrons may park anywhere on the property.

Upon his arrival, Deputy Poplin parked on Town Hall Road, near a wooden statue on the edge of the property that was surrounded by scaffolding and a male adult on the scaffolding was carving the statue.  As Poplin approached the scaffolding, he attempted to get the attention of the individual, who was wearing eye and hearing protection and using an electric carving tool.  After the individual shut off the tool and removed his protection, Poplin asked if he was Peter Thoreson.  When Thoreson confirmed that he was, Poplin next stated that he wanted to discuss a matter with him, and he asked that Thoreson come

down from the scaffolding.  At that point, Thoreson maintains that he declined, specifically telling Poplin that he did not want to speak without an attorney present, which prompted Poplin to order Thoreson to get down off the scaffolding and speak with him.  At that time, Thoreson was obviously not interfering with the execution of the search warrant, and there was no reason for Poplin to believe that Thoreson was going to his residence.

After descending the scaffolding, Thoreson asked if he could blow sawdust off himself with an air compressor, and Poplin agreed to his request while still standing several feet away.  Thoreson then walked to the workshop, where the air compressor is located, which is a distance of about 25 yards from the scaffolding.  Poplin followed, but remained several feet behind him.  As Thoreson used the air compressor, Poplin received a message in his ear piece from the law enforcement officers at Thoreson's residence that he should arrest Thoreson based on evidence found at his residence.  Poplin then told Thoreson that he was under arrest.

Defendants contend that up until this point, Deputy Poplin had not told Thoreson that he was under arrest or not free to leave, and Thoreson had not asked if he was free to leave.  As plaintiff points out, however, Poplin wrote in his own narrative of the event that he told Thoreson he would need to detain him when Thoreson was still up on the scaffolding.  The CAD reports show that Poplin radioed dispatch that Thoreson was in custody at 12:49 p.m., approximately two minutes after he had arrived at the business, which is consistent with Thoreson's account of the timeline.

Regardless, after formally being told that he was under arrest, Thoreson started to walk to his vehicle, indicating that he wanted to get his phone.  Because Thoreson also

6

advised that there as a firearm in his vehicle, Deputy Poplin retrieved the phone for him, then searched him and placed him in handcuffs.  Poplin next directed Thoreson into his patrol vehicle.

While proceeding to drive to the rear of the property, Poplin noticed that Thoreson's vehicle's windows were open, and the keys were still in the car, prompting Poplin to stop and ask Thoreson if he wanted him to secure his vehicle.  When Thoreson responded "no," Poplin radioed City Assistant Chief Wohling to ask what he should do with Thoreson's vehicle.  Wohling then directed Poplin to arrange for a tow truck for the vehicle and to stay on the scene until another law enforcement officer arrived to maintain the chain of custody of the vehicle, which he did.  Several minutes later, Wohling and a tow truck arrived at Thoreson Long Works at roughly the same time.  Turning the scene over to Wohling, Poplin then transported Thoreson to the Sawyer County jail, where Thoreson was booked and released on signature bond.

Thoreson was later charged with carrying a concealed weapon, possession of tetrahydrocannabinols, and possession of drug paraphernalia.  After initially pleading not guilty, Thoreson ultimately pleaded guilty to possession of marijuana in violation of City of Hayward Ordinance No. 263(1).

### C. 2019 Search Warrant

In October 2019, the Hayward Police Department conducted another criminal investigation of Thoreson related to drug possession, after Hayward City Police Officer Ernest Ziemer took a complaint of child neglect and drug-endangered children from Thoreson's ex-wife.  Specifically, one of Thoreson's children described drug use and

possession that she witnessed while in Thoreson's presence.

As a result of this investigation, Officer Ziemer asked County Deputy Poplin on October 11, 2019, to assist him in procuring a search warrant for Thoreson's residence. After agreeing to do so, Poplin applied for a search warrant himself for Thoreson's residence, including "any associated storage facilities, outbuilding and vehicles on the premises." (Poplin Decl., Ex. B (dkt. #50-2) 1.)  Again, Judge John Yackel signed the warrant that same day.

As in 2016, City of Hayward police officers again asked Sawyer County Sheriff's personnel to assist in executing the search warrant.  Deputy Poplin informed defendant Kevin Gillis, a deputy with the Sawyer County Sheriff's department, that Poplin would be assisting the City Police Department with executing the warrant.  As a result, Gillis was aware (1) that Thoreson was the subject of a criminal investigation, (2) of the nature of the suspected criminal activity, and (3) of the items sought in the warrant in connection with that activity.  Before executing the warrant, Poplin also asked Wisconsin Department of Justice Special Agent Jay Smith to check and see if Thoreson was at his business property, and if so, to monitor him while the search warrant was executed.  Poplin also asked Gillis to go to the Seeley area, visually confirm Thoreson's whereabouts, and if necessary, make contact with him to ensure the safe execution of the search warrant. However, Poplin did *not* order Gillis to detain Thoreson.

At approximately 3:05 p.m., City Officer Ziemer and County Deputy Poplin arrived at Thoreson's residence to execute the warrant.  Around this same time, County Deputy Gillis traveled north on U.S. Highway 63 toward Thoreson Log Works in the Town of

Lenroot.  Gillis was in uniform, armed and in a marked patrol vehicle.  As Gillis was traveling north, however, Poplin radioed him to advise that, according to Agent Smith, Thoreson had left Thoreson Log Works, and he was now traveling south on 63 toward Hayward, "if you want to[,] find it [meaning 'the target'] and pull him over."  (Defs.' Reply to Defs.' PFOFs (dkt. #64) ¶ 98 (quoting Poplin Dep. (dkt. #50) 32).)

Shortly after this call, Deputy Gillis passed Thoreson's vehicle traveling in the opposite direction.  Gillis immediately turned around and started traveling south on Hwy. 63, behind Thoreson's vehicle.  At this point, Thoreson was still approximately five miles from his residence in Hayward.  Rather than continue on Hwy. 63, however, Gillis then observed Thoreson's vehicle turn north, onto Pfeiffer Road, away from the direction of Hayward and Thoreson's residence.  Perceiving that Thoreson was attempting to elude him, Gillis decided to follow and activate his emergency lights.  After Thoreson pulled his vehicle over, approximately 50 yards after turning onto Pfeiffer Road, Gillis radioed dispatch that he was with Thoreson at 3:11 p.m.

Gillis next exited his vehicle, approached, and verbally confirmed Thoreson's identity.  Gillis then asked Thoreson to step out of his vehicle and handcuffed him, before patting him down.  At that time, plaintiff contends that Gillis also advised Thoreson that he was being detained, and that the stop was related to the execution of a search warrant at his residence in Hayward.  Finally, Gillis placed Thoreson in the locked back of his patrol vehicle.

Back at Thoreson's residence, law enforcement failed to find any drugs and decided not to arrest or charge Thoreson.  Accordingly, they radioed Gillis to release Thoreson, who

was still being held at the Pfeiffer Road scene.  At approximately 3:38 p.m., Gillis did so, having detained Thoreson for approximately 27 minutes.

### D. Facts Relevant to County Liability

Other than this case, no other individual has brought a lawsuit against the County alleging any problem with arrests or seizures incident to execution of a search warrant. There have also been no other known complaints about the County detaining individuals while executing search warrants without probable cause or reasonable suspicion.

In 2016 and 2019, the Sheriffs' Department also had multiple policies, rules and procedures in effect regarding training, evaluation and discipline of its officers.  Formal discipline would also be imposed to correct behavior and/or to deter behavior that violated Department rules.   The types of discipline could include a written warning, verbal reprimand, written reprimand, suspension, demotion and termination.  In 2016 and 2019, employees were further evaluated on a regular basis.

Moreover, Deputies Poplin and Gillis, as well as other members of the patrol division of the Sheriff's Department, were certified as law enforcement officers and received basic instruction on search warrants, probable cause and reasonable suspicion.  In order to maintain their certification, they were also required by the State and the Sheriff's Department to receive a minimum of 24-hours of in-service training annually.  Finally, Poplin, Gillis and other members of the Sheriff's department received field training on search warrant execution, probable cause and reasonable suspicion, although neither Poplin nor Gillis recalled receiving training specifically about the detention of individuals during execution of search warrants, apart from their respective basic training courses.

At his deposition, Deputy Gillis testified that it was the Sheriff's Department's practice to detain an individual, even if not present during the execution of a search warrant at his home, provided officers "have reasonable suspicion or probable cause to detain that subject [of a search warrant] and we know where they are at."  (Gillis Dep. (dkt. #38) 26-27.)  Gillis further testified that the only time the Department executed a warrant on an unoccupied residence and did *not* send an officer to locate the resident were when they had no idea where the resident may be located.  For his part, Deputy Poplin testified that he believed a search warrant of a residence gives law enforcement officers reasonable suspicion to conduct a Terry stop of the individual whose residence is the subject of that search warrant, even if not at or in the vicinity of the residence.  (Poplin Dep. (dkt. #39) 56 (explaining that "[s]earch warrants for residences are for evidence of crimes, which gives you a reasonable suspicion that an individual is committing a crime").)

## OPINION

### I.  Motion to Dismiss

In their motion to dismiss, defendants sought dismissal of plaintiff's municipal liability claims asserted against Sawyer County and its Sheriff's Department on the basis that plaintiff failed to allege a custom, practice or policy in support of that claim.  However, the complaint alleges that defendants Poplin and Gillis unlawfully detained plaintiff outside of the vicinity of his home, in 2016 and 2019, respectively,  while other individuals were simultaneously conducting a search of his residence, *and* that they acted consistent with the County's "official customs, policies or practice of inadequately training,

supervising, preparing and monitoring" its staff. (Compl. (dkt. #1) ¶¶ 78, 95, 105.) While defendants argue that the law demands more than this notice pleading, that is not the standard for evaluating a motion to dismiss. Instead, defendants' arguments are better addressed in a motion for summary judgment, which they have now also filed. As such, the court will take up those arguments below.

As plaintiff concedes in his response, however, defendants' other bases for seeking dismissal have more traction. Plaintiff acknowledges that he did not comply with the notice requirement under Wisconsin Stat. § 893.80 in asserting a state law false imprisonment claim. (Pl.'s Opp'n (dkt. #30) 20.) As such, the court will dismiss this claim. Defendants also seek dismissal of plaintiff's claims against the Sheriff's Department on the basis that it is not a suable entity. *See, e.g., Whiting v. Marathon Cty. Sheriff's Dep't,* 382 F.3d 700, 704 (7th Cir. 2004) ("[T]he Marathon County Sheriff's Department is not a legal entity separable from the county government which it serves and is therefore, not subject to suit."). Plaintiff's only response is to point out that its claim against the County should cover the Department, which it does. (Pl.'s Opp'n (dkt. #30) 20.) As such, the court will also grant this portion of the motion.

## II. Motions for Summary Judgment

Both parties filed motions for summary judgment, although plaintiff failed to file a reply in support of his own motion, perhaps acknowledging that in light of the standard that applies to a party moving for summary judgment on claims for which he bears the burden of proof, the motion had little merit. As a result, the court will focus on defendants'

motion, while still considering any arguments asserted with respect to plaintiff's motion.[5]

Understandably, plaintiff principally relies on the Supreme Court's decision in *Bailey v. United States*, 568 U.S. 186 (2013), to pursue his claims that defendants violated his Fourth Amendment rights in detaining him several miles away from his home while law enforcement officers conducted a search of his residence. In *Bailey*, the Court considered the reach of the Supreme Court's holding in *Michigan v. Summers*, 452 U.S. 692 (1981), that officers executing a search warrant could "detain the occupants of the premises while a proper search is conducted." 568 U.S. at 193 (citing *Summers*, 452 U.S. at 705). In *Summers*, "the Court recognized three important law enforcement interests that, taken together, justify the detention of an occupant who is *on the premises* during the execution of a search warrant: officer safety, facilitating the completion of the search, and preventing flight." *Bailey*, 568 U.S. at 194 (emphasis added) (citing *Summers*, 452 U.S. at 702-703). However, in *Bailey* the defendant was subject to a seizure approximately one mile from his apartment that was subject to the search warrant. *Id.* at 190. Further, the defendant was driving *away* from his apartment at the time, prompting him to seek suppression of the evidence derived from his detention. *Id.* at 191.

In *Bailey*, the Court specifically rejected any argument that the interests found to justify defendant's detention in *Summers* when he was in the immediate vicinity of the residence being searched applied when a defendant was *not.*

> A spatial constraint defined by the immediate vicinity of the
> premises to be searched is therefore required for detentions

---

[5] Since a reply is optional, the court has certainly not deemed plaintiff to have waived his request for summary judgment, although as just alluded to above (and addressed more fully below), his burden of proof was daunting from the outset.

> incident to the execution of a search warrant. The police action permitted here—the search of a residence—has a spatial dimension, and so a spatial or geographical boundary can be used to determine the area within which both the search and detention incident to that search may occur. Limiting the rule in *Summers* to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures that the scope of the detention incident to a search is confined to its underlying justification. Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe.

*Id.* at 201. In other words, the Court in *Bailey* expressly held that a search warrant did *not* justify detention of an individual outside of the immediate vicinity of the premises being searched. Indeed, in his concurrence, Justice Scalia observed that *Summers* had already established "a categorial, bright line rule" for law enforcement to follow, *id.* at 203, which if not sufficiently bright in *Summers*, is certainly so after *Bailey*.

Of course, as defendant points out, the Court in *Bailey* also affirmed that an individual could still be detained for other reasons, namely those supporting a *Terry* stop. *Id.* at 202. The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. "Ordinarily seizures are 'reasonable' only when supported by probable cause to believe an individual has committed a crime." *Matz v. Klotka,* 769 F.3d 517, 522 (7th Cir. 2014). While there is an exception under *Terry v. Ohio,* 392 U.S. 1 (1968), which "authorizes brief investigatory detentions based on the less demanding standard of reasonable suspicion that criminal activity is afoot," *id.* (citing *Terry,* 392 U.S. at 21-22), "[s]uch a brief detention is permitted when it demands only a limited intrusion into an individual's privacy and rests on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that

14

intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21-22). Reasonable suspicion is a less demanding standard than probable cause, but a *Terry* stop still requires "at least a minimal level of objective justification and the officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Matz*, 769 F.3d at 522 (quoting *Terry*, 392 U.S. at 27). Thus, on remand in *Bailey*, the Second Circuit concluded that the officers had reasonable suspicion to stop and patdown the defendant, but *not* on the evidence that gave rise to the search warrant alone. *United States v. Bailey*, 743 F.3d 322, 333-34 (2d Cir. 2014).

### A. 2016 Interaction with Defendant Poplin

With respect to Officer Poplin's interaction with Thoreson on November 11, 2016, defendants seek summary judgment on the basis that Thoreson was not detained or seized during the brief interaction preceding Poplin placing Thoreson under arrest. Instead, defendants characterize the interaction as a "consensual police-citizen encounter." (Defs.' Opening Br. (dkt. #47) 18.) Certainly, "a seizure does not occur merely because a police officer approaches an individual and asks him or her questions." *United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015). Instead, the appropriate test is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (internal quotation marks and citation omitted).

While defendant describes various factors to consider -- a number of which may weigh in favor of finding that there was no detention or seizure -- Thoreson avers that while

he was on the scaffolding, Poplin ordered him to get down off the scaffolding and also ordered Thoreson to speak with him.  A reasonable jury could credit this testimony and conclude that Poplin detained Thoreson shortly after he arrived at his business and made contact with him.   Moreover, this inference is supported by Thoreson's memory *and* Poplin's own, contemporaneous narrative of the events that he *told* Thoreson he would need to detain him when he was still up on the scaffolding.  At minimum, this evidence raises a genuine issue of material fact as to whether Thoreson was detained, albeit for only a couple of minutes before Poplin formally placed him under arrest.[6]

In the alternative, defendants argue that even if Thoreson was detained or seized before Poplin placed him under arrest, "[p]robable cause for any detention had already been established by the issuance of the search warrant."  (Defs.' Opening Br. (dkt. #47) 20.)  If the court were to credit this argument -- that the issuance of a search warrant could provide a basis to detain an individual associated with the premises being searched -- then this might provide an end-run around the categorial, bright line for detention articulated by the Supreme Court in *Bailey*.   In other words, defendants appear to be justifying Thoreson's detention *solely* based on the issuance of a search warrant, rather than any independent basis that would have justified an investigatory detention.  Indeed, the cases cited by *defendants* in support of the legality of Thoreson's detention or arrest demonstrate that an investigatory detention outside of the immediate vicinity of the premises subject

---

[6] While defendants stress that this pre-arrest interaction consisted of a minute or two, defendants do not point to any caselaw that would foreclose a finding of a detention or seizure based on the *length* of the interaction.  Instead, the short time period would appear to limit Thoreson's claim to damages.

to a search warrant must be justified by an independent basis, separate from the simple fact that the defendant's residence was subject to a search warrant.  *See, e.g.*, *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (affirming, on remand, that Bailey's departure from the residence supported a finding that "Bailey's initial stop and patdown were supported by articulable facts giving rise to a reasonable suspicion that he may have, and might still be, engaged in criminal activity"); *McBride v. Odle*, No. 3:15-CV-00559, 2018 WL 1412148, at *5 (N.D. Ind. Mar. 19, 2018) (arresting the defendant for visiting a public nuisance).[7]

In fairness, defendants also appear to argue that the evidence referred to in the search warrant application -- Thoreson's ex-wife's report of his drug possession and activity -- provided Poplin with probable cause to detain Thoreson.  First, defendants' own actions call into question this theory.  There is nothing in the record to support a finding that Poplin was prepared to place Thoreson under arrest for the criminal activity alleged in the search warrant application at the time he arrived and made contact with Thoreson.  Instead, the record is undisputed that the decision to arrest Thoreson was made *after* the search of the premises produced evidence to support the allegations of drug activity.  At minimum, a reasonable jury could reject defendants' contention that a reasonable officer could rely on the contents of the search warrant application to form either probable cause to arrest or reasonable suspicion to detain Thoreson.

Second, defendants stop short of fully developing an argument, much less directing

---

[7] Defendants also cite to *Gaines v. United States*, No. 13-CV-2157, 2014 WL 1891340, at *5 (C.D. Ill. May 12, 2014), but in that case the court held that the arrest happened within the immediate vicinity of the searched premises.

the court to legal support for the proposition that an interested third-party report of marijuana possession could justify a warrantless arrest. *See, e.g.*, *United States v. Lopez*, 907 F.3d 472, 482 (7th Cir 2018) (explaining that to satisfy reasonable suspicion, tips from known but unproven informants must be verified by at least some facts supporting the informant's allegations before seizing the subject of the tip). Moreover, Deputy Poplin had no basis to believe that Thoreson was in possession of *any* illegal drugs on his person or in his car (the only second-hand information being that he may have had it in his residence, which is why the results of the search were so crucial). Moreover, defendants have failed to develop any argument or point to any urgent circumstances that would have required a warrantless seizure. *See, e.g.*, *Lopez*, 907 F.3d at 484 (explaining that "urgent circumstances" were "the hallmark justifications of *Terry* stops"). On these facts, a reasonable jury could conclude that an objective officer lacked grounds to detain.

Plaintiff next contends that Poplin unlawfully seized his vehicle. Defendants seek summary judgment on this portion of plaintiff's claim, arguing that the evidence demonstrates that he did not seize the vehicle; rather, Poplin simply had it towed at the City of Hayward's Assistant Chief Wohling's instruction. "'[A] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property' caused by a government actor." *Bell v. City of Chi.*, 835 F.3d 736, 739 (7th Cir. 2016) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). A reasonable jury could find that towing a vehicle interfered with Thoreson's possessory interest in it. Moreover, it is undisputed that Thoreson asked Poplin *not* to secure it. As for whether it was Poplin's actions or Wohling's, the record also reflects that it was Poplin who initiated

18

the discussion with Wohling as to what to do with Thoreson's vehicle.  This action serves as a sufficient basis to find Poplin personally involved in having Thoreson's vehicle towed, or at least a reasonable jury could so find.  *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (explaining that to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts showing that an individual personally caused or participated in a constitutional deprivation).

Finally, defendants contend that even if his vehicle was seized, Poplin seized it in his capacity as a community caretaker.  "The community caretaker doctrine is similar to the exigent circumstances doctrine, and allows police officers to engage in certain community caretaking functions, unrelated to criminal law enforcement, to protect members of the public."  *Mason v. Green Cty.*, 451 F. Supp. 3d 984, 993 (W.D. Wis. 2020) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *Long v. United States*, 847 F.3d 916, 921 (7th Cir. 2017)).  Moreover, in the context of an arrestee -- which was Thoreson's unchallenged legal status at the time Poplin and Wohling made the decision to tow his vehicle -- the decision to impound an automobile is valid "if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots."  *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996).  As the party seeking to invoke an exception to the warrant requirement, defendants have the "burden of establishing that the circumstances required dispensing with that requirement."  *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985).  As such, "[w]here, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these

elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015).

As described above, plaintiff's vehicle was in a parking lot, arguably falling within the boundaries of *Duguay*. However, the parking lot was on Thoreson's business premises, and thus, the same concerns about a vehicle remaining in a public parking lot would not appear to be present. Still, it is undisputed that the car windows were down, the keys were in the vehicle, and there was a firearm in Thoreson's vehicle. The latter is particularly troubling. Moreover, Thoreson's business bordered the Sawmill Saloon, a dining establishment, and so was not so isolated as to diminish concern. Based on this undisputed fact -- the presence of a firearm in an unlocked vehicle -- the court concludes that a reasonable jury would necessarily find in defendants' favor on this aspect of plaintiff's claim. In the alternative, even if the record is not so one-sided to warrant granting defendants' motion on this community caretaker defense, the court agrees with defendants that qualified immunity it warranted with respect to this particular theory, as explained below. While perhaps there is an argument that an officer should have locked it, removed the keys, or removed the firearm, plaintiff does not offer any evidence or argument that he was injured by the towing of his vehicle.[8]

---

[8] Even if the court's determination that the undisputed record did not permit a finding in plaintiff's favor on this aspect of his claim, the court, alternatively, would grant defendants' motion on qualified immunity grounds as to this narrow claim. As for the remaining claims, *Bailey* at least requires a more fulsome consideration of the evidence at trial, but on the apparent evidence on summary judgment would appear to preclude the applicability of qualified immunity to the individual defendants.

For these reasons, the court will deny defendants' motion for summary judgment on plaintiff's claim asserted against defendant Poplin based on his interaction with Thoreson in November 2016, but will grant the motion with respect to the decision to tow his vehicle.

## B. 2019 Detention with Defendant Gillis

With respect to the October 11, 2019, detention, defendants contend that Gillis acted lawfully because there was either probable cause or at least reasonable suspicion to detain Thoreson.  As an initial matter -- and as defendants anticipate in arguing that Gillis had probable cause to detain Thoreson -- the undisputed facts would support a jury finding that the October 11, 2019, incident constituted an arrest, rather than a *Terry* stop.  As this court recently explained in *Turner v. Bruce*, No. 17-CV-578-WMC, 2019 WL 286966, (W.D. Wis. Jan. 22, 2019),

> In contrast, a stop that is prolonged unnecessarily by the officers or involves the "hallmarks of formal arrest," such as applying handcuffs, drawing weapons, and placing suspects in police vehicles, may either be a reasonable investigatory detention or may be an arrest, depending on the circumstances.

*Id.* at *2 (citing *Matz v. Klotka*, 769 F.3d 517, 524–25 (7th Cir. 2014) (Terry stop "may also become a de facto arrest if the detention continues longer than necessary to accomplish the purpose of the stop or becomes 'unreasonably intrusive.' ") (citations omitted)).  Here, Gillis applied handcuffs, patted down Thoreson, and placed him in a police vehicle.  More importantly, defendants offer no evidence that Gillis actually engaged in an investigation. Instead, from the record to date, he was simply detaining Thoreson until the search was completed and to see whether grounds for arrest were found or, at least, a reasonable jury

could so find.

Putting aside the question of whether Deputy Gillis's interaction with Thoreson constituted an arrest, rather than an investigatory stop, defendants make the same argument as they did in defending Poplin's November 11, 2016, interaction:  the issuance of the search warrant or the contents of the search warrant application provided probable cause or reasonable suspicion to arrest or detain Thoreson.  As explained above, however, the court rejects this argument as contrary to the Supreme Court's holding in *Bailey*.  While the court agrees that reasonable suspicion or probable cause *could* justify Gillis's decision to pull over and detain Thoreson, Gillis's justification cannot rely on issuance of a search warrant application *to look* for probable cause evidence.  Moreover, defendants' actions demonstrate that they did not act on the contents of the search warrant to conclude that there was probable cause to arrest Thoreson; instead, law enforcement officers waited until the search was completed, and with respect to the 2019 incident, concluded that there was not probable cause to arrest him.  A reasonable jury could rely on this evidence to conclude that in light of the totality of the circumstances, Deputy Gillis did not have probable cause to arrest or reasonable suspicion to detain Thoreson.

If anything, the evidence for an arrest is even *more* suspect in 2019, since it turns on the testimony of an 11 year old, who blames her father after being caught using and distributing marijuana herself.  *See, e.g.*, *Lopez*, 907 F.3d at 482 (requiring some corroboration of allegations from known but unproven informant before reasonable suspicion to justify a detention); *United States v. Aleshire*, No. 14-CR-79-JDP, 2014 WL 11394906, at *3 (W.D. Wis. Dec. 24, 2014), *aff'd*, 787 F.3d 1178 (7th Cir. 2015)

(examining concerns about reliability of child informants).  This is not to say she was not credible or may have been telling the truth, but rather that she did not provide a sufficient basis alone to arrest, which is of course why Deputy Gillis was waiting for word that he should proceed to bring Thoreson in, fell apart, and he, in fact, let him go after the warrant turned up nothing.  As in 2016, therefore, defendants' point to nothing more than suspicion that the search will turn up hard evidence.

While Gillis represents that he viewed Thoreson's decision to turn off of Route 63 onto Pfeiffer Road as an attempt to evade him, defendants, however, stop short of arguing that Thoreson's decision to turn would serve as a basis to detain him, even if it could justify a stop.  In fact, even if this suspicion were credited, unlike *Bailey*, the stop produced *no* additional evidence to support an arrest.

Based on all these facts, the court concludes that plaintiff has raised a genuine issue of material fact to whether Gillis's November 11, 2016, detention (and likely arrest) of Thoreson was unreasonable, and thus, violated his Fourth Amendment rights.[9]  Of course, there also remains the question of damages for an arrest lasting less than 30 minutes while sitting in the back of a sheriff's car, but that will be for a lay jury to decide.

## C. Qualified Immunity

In addition to moving on the merits of plaintiff's claims, defendants also argue that they are entitled to qualified immunity.  The "doctrine of qualified immunity shields

---

[9] Although the court hesitates to grant summary judgment to plaintiff on liability in light of its burden of proof, and general deference given police officers, the bright line set by *Bailey* may result in a directed verdict in favor of plaintiff on liability, at least with respect to the 2019 arrest.

officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*per curiam*) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  A qualified immunity defense has two prongs: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation."  *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017) (quoting *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2016)).  "[C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Pearson*, 555 U.S. at 236).

"A clearly established right is one that is sufficiently clear that every reasonable official would understand that what he is doing violates that right."  *Mullenix*, 577 U.S. at 11 (internal citations and quotations omitted).  While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft*, 563 U.S. at 741.  Defendants contend that plaintiff cannot demonstrate that it was "clearly established in either 2016 or 2019" that an individual has a right

> to be free from an unreasonable seizure away from a residence that is being searched (1) when officers have probable cause that the individual has engaged in criminal activity, particularly when a search warrant established probable cause of criminal activity connected to the individual, and (2) when an individual is traveling in the direction of the location being searched, is suspected of being armed, and appears to be alluding law enforcement.

(Defs.' Opening Br. (dkt. #47) 28.)  Neither argument has merit.

24

The first argument has been flatly rejected by the United States Supreme Court in *Bailey*, which clearly established, if it had not already done so in Summers, that an individual associated with a residence subject to a search warrant could only be arrested based on that search if he were in the immediate vicinity of the property.  To the extent defendants are relying on some independent basis for detaining plaintiff, there are fact issues that preclude finding qualified immunity at summary judgment. *See, e.g.*, *Weinmann v. McClone*, 787 F.3d 444 (7th Cir. 2015) ("The existence of a factual dispute about the circumstances surrounding McClone's decision to fire on [Weinmann] precludes a ruling on qualified immunity at this point. The district court correctly recognized this.").  In other words, defendants have *not* adopted the facts viewed in the light most favorable to plaintiff in asserting this defense. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (a court must adopt the plaintiff's version of the facts in assessing qualified immunity defense at summary judgment).

As for the second argument, here, too, defendants have not adopted the facts in the light most favorable to plaintiff. *See Scott*, 550 U.S. at 378.  Indeed, as for defendants' position that plaintiff was traveling in the direction of his residence, the undisputed facts demonstrate that plaintiff had turned *away* from Hayward at the point he was pulled over and detained by defendant Gilles.  Moreover, the assertion of this defense turns on factual disputes as to:  (1) whether Deputy Gilles even knew that Thoreson had a firearm in his vehicle three years before; *or* (2) whether Gilles reasonably concluded that Thoreson was attempting to evade him.  Not only must defendants adopt the facts in the light most favorable to the plaintiff in seeking qualified immunity, *Scott*, 550 U.S. at 378, but these

25

facts only get you to a *Terry* stop, not a continued detention or arrest, which the evidence also allows a jury to find occurred here.

### D. *Monell* Liability against the County

This leaves plaintiff's claims asserted against the County.  In proving *Monell* liability, plaintiff relies on two theories:  (1) the County's practice or policy of arresting individuals whose residence is the subject of a search warrant regardless of whether individual is within the immediate vicinity of the residence; and (2) the County's failure to train law enforcement officers as to the lawful boundaries of detaining individuals during the execution of a search warrant.

A municipality may be held liable for the violation of a plaintiff's constitutional rights under 42 U.S.C. § 1983 when that violation results from a policy, custom or practice adopted or authorized by the municipality.  *Monell*, 436 U.S. at 690-92.  Put differently, a municipality can be held liable for the violation of an individual's civil rights if that violation results from an express policy that causes a constitutional deprivation when enforced *or* from "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995) (internal quotation marks and citation omitted).

As for plaintiff's failure to train theory, the Supreme Court held in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* at 388.

26

As the Seventh Circuit explained, this type of municipal "liability [must] be based on a finding that the policymakers have actual or constructive notice that a particular omission [ ] is likely to result in constitutional violations." *Cornfield v. Consol. High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993).    "Notice" may arise in either of two circumstances.

> First, a municipality acts with deliberate indifference when, "in light of the duties assigned to specific officers or employees the need for more or different training is *so obvious*, and the inadequacy so likely to result in the violation of constitutional rights," that the deficiency exhibits deliberate indifference on the part of municipal policymakers. Alternatively, we may find deliberate indifference when a *repeated pattern* of constitutional violations makes "the need for further training ... plainly obvious to the city policymakers."

*Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (quoting *Canton*, 489 U.S. at 390 & n.10) (internal citations omitted; emphasis added).  Stated another way, if the County "is faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [it] may not adopt a policy of inaction." *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (internal citation and quotation marks omitted).

As for the first theory -- that the County has a practice of detaining or arresting individuals associated with the premises subject to a search warrant without regard to the location of the individual -- the court agrees with plaintiff that he has proffered enough evidence, if barely, to support a reasonable jury finding of *Monell* liability.  Plaintiff's best (if not sole) evidence are the individual defendants' testimony during his deposition that the Sheriff's Department had a "practice" to locate and detain the resident of a home during the execution of a search warrant.  (Gillis Dep. (dkt. #44) 25-27; Poplin Dep. (dkt.

27

#39) 56.)

If accepted by the jury on its face, this practice appears to violate *Bailey* on its face. Further, the fact that two different officers appear to have applied this so-called "practice" over the span of three years arguably corroborates this testimony, although more examples would have surely strengthened its reliability, and defendants are free to argue no such practice exists at trial.

Moreover, when asked, "[a]nd is it your past practice to detain that individual when they are found until the search warrant is done being executed," Gillis responded, "[a]s long as I've been working for the sheriff's office, if we have reasonable suspicion or probable cause to detain that subject and we know where they are at, yes." (*Id.* at 27.) This additional testimony *can* be read as consistent with *Bailey*, but as discussed above *and* as argued in defendants' summary judgment briefing, the County itself attempts to ground a finding of probable cause or reasonable suspicion in the fact that a search warrant issued alone. Moreover, Poplin testified during his deposition that "[s]earch warrants for residences are for evidence of crimes, which gives you a reasonable suspicion that an individual is committing a crime," also offering support for a jury finding that the Department had a practice of detaining individuals associated with a search warrant without consideration of whether there was an independent basis to support the detention. (Poplin Dep. (dkt. #39) 56.) And, again, the practice of treating the issuance of a search warrant as grounds to justify the detention or arrest of an individual without regard to his or her presence within the immediate vicinity of the premises being searched is directly contrary to the holding in *Bailey*. As such, if the jury credits Gillis's "practice" testimony,

28

then it could reasonably conclude that the County should be liable for the individual defendants' constitutional violations.

As for plaintiffs' alternative theory that the County is also liable for failing to train individual officers on the lawful arrest or detention of individuals associated with premises subject to a search warrant, plaintiff submit no evidence specifically supporting this claim, except the fact that two officers appeared confused by the need for reasonable suspicion to stop and probable cause to arrest on two separate occasions to arrest, over three years. In particular, except for Gillis's testimony that the County had a practice of detaining individuals associated with premises being searched, plaintiff stops short of submitting evidence to support a "repeated pattern" of violations, and certainly well short of proving more senior leadership in the County had been made aware of a need for different training "so obvious" that a reasonable jury could find the County acted with *deliberate indifference* to its obligations to train its law enforcement officers. *Jenkins*, 487 F.3d at 492.

As such, while the court will grant defendants summary judgment on its claimed failure to train, it will deny defendants' motion for summary judgment with respect to the County having adopted a practice of detaining individuals associated with a residence subject to a search warrant without regard to their proximity to the search, whether there was an independent basis to find probable cause to arrest or reasonable suspicion to detain.

## III.  Motion to Hold Trial in Eau Claire

Finally, defendants move to hold the trial in Eau Claire, representing in the motion that plaintiff does not oppose it. (Dkt. #65.) While the court would ordinarily be receptive to this motion, the courtroom in Eau Claire is currently being renovated, and the

renovation will not be completed by the April 19, 2021, trial date. As such, the court must deny the motion, but is open to exploring three other, possible arrangements. First, the court would be open to exploring holding this civil jury trial via Zoom. The court has held a bench trial via Zoom and other federal district courts have now successfully conducted civil jury trials using the same means in light of COVID concerns. Second, if the trial is held in Madison, the court is open to witnesses appearing via video to reduce the burden of travel and the continuing COVID risks. Third, the court would entertain a motion to postpone the trial until the courthouse in Eau Claire has been renovated, although the timetable for its completion is uncertain. As such, this strikes the court as by far the least desirable option. Accordingly, the parties should confer and submit a joint response as to their preference, or if not able to reach an agreement, separate responses to the court's suggestions by the existing March 12, 2021, deadline for submitting Rule 26(a)(3) disclosures and motions in limine.

ORDER

IT IS ORDERED that:

1) Defendants Kevin Gillis, Jaymes Poplin, Sawyer County and Sawyer County' Sheriff's Department's motion to dismiss (partial) amended complaint (dkt. #21) is GRANTED IN PART AND DENIED IN PART. The motion is granted as to plaintiff's state law false imprisonment claim and his claims asserted against the Sawyer County Sheriff's Department. In all other respects, it is denied. The clerk's office is directed to terminate the Sawyer County Sheriff's Department as a defendant. At the close of this case, the clerk's office is directed to enter judgment in defendants' favor on the false imprisonment claim.

2) Plaintiff Peter J. Thoreson's motion for summary judgment (dkt. #40) is DENIED.

30

3) Defendants' motion for summary judgment (dkt. #46) is GRANTED IN PART AND DENIED IN PART.  The motion is granted as to plaintiff's Fourth Amendment claim against defendant Poplin based on the towing of his vehicle and plaintiff's *Monell* claim against the County based on a failure to train theory. In all other respects, the motion is denied.

4) Defendants' unopposed motion to hold trial in Eau Claire (dkt. #65) is DENIED.

Entered this 4th day of March, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

31